Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 97 C 7556 | DATE | OCTOBER 12, 2000 |
| CASE TITLE | SHARON ANDERSON, et al. v. MARIO CORNEJO, etc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiffs' motion for limited reconsideration [190] is granted in part and denied in part. Counts VII and VIII are reinstated in part. Defendants' motion to alter or amend judgment [191] is denied. Plaintiffs' motion to compel [212] is denied. Class certification of the Count VII damages claim is vacated. Class certification for purposes of injunctive relief on Counts II, IV, VII, IX, and X is modified. Status hearing set for October 25, 2000 at 11:00 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | 6 number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | | OCT 16 2000 date docketed | |
| | Notified counsel by telephone. | | | 223 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | FILED FOR DOCKETING | | |
| | Copy to judge/magistrate judge. | 00 OCT 13 PM 4:18 | 10/12/2000 date mailed notice | |
| CW | courtroom deputy's initials | Date/time received in central Clerk's Office | mqm mailing initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHARON ANDERSON, et al.,  )
                          )
            Plaintiffs,   )
                          )
    v.                    )     No. 97 C 7556
                          )
MARIO CORNEJO, individually and )
in his official capacity, )
et al.,                   )
                          )
            Defendants.   )

**MEMORANDUM OPINION AND ORDER**

As presently constituted, this case has approximately 90 named plaintiffs, all of whom are African-American women who were allegedly searched by employees of the United States Customs Service at Chicago's O'Hare International Airport following their arrivals on international flights. Named as defendants are the United States, the Customs Service, and approximately 70 current or former employees of the Customs Service. In <u>Anderson v. Cornejo</u>, 2000 WL 286902 (N.D. Ill. March 10, 2000) ("<u>Anderson IV</u>"), class certification was granted as to certain claims, <u>see</u> <u>id.</u> at *2-10; Counts VII and VIII in their entirety and Count VI in part were dismissed, <u>see</u> <u>id.</u> at *11-17; and certain claims of six plaintiffs were dismissed on summary judgment, <u>see</u> <u>id.</u> at *19-28. Three motions are presently

pending. Plaintiffs seek reconsideration of (a) the denial of Rule 23(b)(3) class certification as to certain counts, (b) the dismissal of Counts VII and VIII, and (c) the grant of summary judgment as to the six plaintiffs. Defendants seek reconsideration of the denial of summary judgment as to one search of a particular plaintiff. Last, plaintiffs have moved to compel the production of certain computer data.[1]

Plaintiffs' motion for reconsideration will be considered first. Plaintiffs contend that a change of the definition for the class could result in the damages claims in Counts II, IV, IX, and X being certified. Certification was denied as to those counts on the ground that individual issues (of whether particular plaintiffs were unlawfully searched) would predominate. See Anderson IV, 2000 WL 286902 at *7-9. It was noted that Wilson v. Tinicum Township, 1993 WL 280205 (E.D. Pa. July 20, 1993), found it appropriate to certify a Rule 23(b)(3) class concerning searches at a highway stop because the focus was on the operation itself instead of the individual circumstances surrounding each stop. See Anderson IV, 2000 WL 286902 at *6 (citing Wilson, 1993 WL 280205 at *8). In the present case, it was found that it is likely that, in determining damages

---

[1] Subsequent to Anderson IV, plaintiffs filed their Seventh Amended Complaint in the Anderson case. Anderson now contains the claims of all plaintiffs, including those who were previously named in the Arnold and Jones cases. The Arnold and Jones cases were thereafter dismissed without prejudice. The numbering of counts and the allegations in the Seventh Amended Complaint are the same as in the complaints that were the subject of discussion in Anderson IV.

liability to individual plaintiffs, individual issues as to the nature of the searches would often have to be considered. <u>Wilson</u> was distinguished because, in that case, the practice of conducting highway stops was being challenged and the class itself only included minorities who were stopped solely on the basis of pretext.[2] <u>Anderson IV</u>, 2000 WL 286902 at *7. Therefore, by definition, the <u>Wilson</u> class could not include plaintiffs for whom an individual question of liability existed. Plaintiffs suggest that, in the case <u>sub judice</u>, the class could be defined as only including persons who were searched without adequate suspicion or because of race. That, however, does not solve the problem of individual issues predominating. Determining who belonged to such a class would be a necessary determination for the award of any damages. To determine who belonged in the class, it would still have to be determined which persons were unlawfully searched. Therefore, it would still be likely that individual issues would predominate. No additional counts will be certified as a class action.

In Counts VII and VIII, it is alleged that plaintiffs, "on nothing more than alleged 'reasonable suspicion,'" were held too long, without judicial authorization, and in nonpublic areas where they could not contact others. In <u>Anderson IV</u>, this allegation was understood to mean that plaintiffs were alleging

---

[2] As was noted in <u>Anderson IV</u>, 2000 WL 286902 at *7 n.8, the <u>Wilson</u> opinion does not explain how membership in the class would be determined.

that this constituted the denial of due process even assuming reasonable suspicion existed. See Anderson IV, 2000 WL 286902 at *8, 13. On reconsideration, however, plaintiffs clarify that they mean that defendants contended the searching employees had reasonable suspicion, but reasonable suspicion did not necessarily exist. That is a reasonable construction of the allegation.[3] Construed in this manner, though, the class certification of Count VII must be limited to certification for purposes of injunctive relief only. This is so because, like the other damages counts, it will now be necessary to determine whether reasonable suspicion existed regarding a particular plaintiff. Therefore, the prior certification of a Count VII damages class will be vacated. This means that the classes that remain certified are all pursuant to Rule 23(b)(2) and are all limited to injunctive relief.

The prior holding, see Anderson IV, 2000 WL 286902 at *13-14, that no due process claim is stated where reasonable suspicion existed to search the plaintiff will stand. Also, as previously held, plaintiffs have no due process claim based on the failure to give Miranda warnings. See id. at *15. Further, as with Count VI, see id. at *12-13, the Count VII damages claim remains dismissed to the extent it is based on a standard patdown search occurring prior to July 6, 1999. Counts VII and VIII will

---

[3]Even if the clarification is inconsistent with the language of the complaint, it would be appropriate to permit an amendment.

be reinstated, but only to the extent they are based on searches without reasonable suspicion, and, as to Count VII damages claim, to the extent not based on a standard patdown search occurring prior to July 6, 1999.

Plaintiffs' remaining argument concerns the grants of summary judgment on qualified immunity grounds.[4] It was held that, as of the time of the searches under consideration (1997 and 1998), Seventh Circuit case law did not clearly establish that a standard patdown search required suspicion. Id. at *23-24. Therefore, to the extent the undisputed facts showed a plaintiff was subjected to a standard patdown search,[5] her claim was dismissed on summary judgment because (for purposes of a damages remedy) no suspicion was required to conduct such a search. See id. at *25-28. Plaintiffs do not dispute Anderson IV's conclusion as to the state of Seventh Circuit case law as of 1997 and 1998. Instead, they contend that defendants are not entitled to qualified immunity because, during the pertinent time period, the Customs Service's Personal Search Handbook,[6] which is

---

[4]Although plaintiffs raise this argument as to the summary judgment ruling, it would also apply to the partial dismissal of Count VI, see Anderson IV, 2000 WL 286902 at *13, and today's application of this holding to the Count VII damages claim.

[5]For an explanation of the distinction between a standard and intrusive patdown search, see Anderson IV, 2000 WL 286902 at *24-25.

[6]No opinion is expressed regarding whether the contents of the Handbook are binding on the Customs Service or its employees.

distributed nationally, provided that "some or mere suspicion" was required to conduct a patdown search. The Handbook cites United States v. Rivera-Marquez, 519 F.2d 1227 (9th Cir.), cert. denied, 423 U.S. 949 (1975), as an example of what constitutes some or mere suspicion. Plaintiffs contend that, despite any ambiguity in then-existing Seventh Circuit case law, defendants could not have acted within objectively reasonable discretion where their conduct was contrary to the Customs Service's own rules.

Citing Hammond v. Kunard, 148 F.3d 692, 697 (7th Cir. 1998), plaintiffs contend that what the officers knew at the time of the searches must be considered and that this would include knowledge of the cited provision of the Handbook. Hammond's reference to a defendant's knowledge, however, refers to the facts the defendant knows about the particular situation. In this case, that would be the facts a searching defendant knows about the plaintiff being searched. The defendant's actual knowledge about the applicable law is not a factor to be considered in ruling on qualified immunity. See Hammond, 148 F.3d at 696-97; Woods v. Indiana University-Purdue University at Indianapolis, 996 F.2d 880, 887 (7th Cir. 1993). More to point, violation of an administrative rule or regulation does not preclude applying qualified immunity where the pertinent constitutional law is not clearly established. Davis v. Scherer, 468 U.S. 183, 194-96 (1984); Stevens v. Umsted, 131 F.3d 697, 707 (7th Cir. 1997); Krocka v. Riegler, 958 F. Supp. 1333, 1344-45

(N.D. Ill. 1997). The qualified immunity ruling will not be modified.

In Anderson IV, summary judgment was denied with respect to the June 21, 1997 search of plaintiff Stacy Harris. See Anderson IV, 2000 WL 286902 at *27-28. Defendants seek reconsideration, contending that Harris's affidavit and deposition testimony are not clear enough regarding the nature of the search in her vaginal area. Having considered defendants' present contentions, the affidavit, and the deposition testimony, no reason is found to modify the prior decision. Anderson IV accurately describes the facts that should be assumed to be true for purposes of summary judgment and, as stated in Anderson IV, those facts constitute a violation of constitutional law that was clearly established in June 1997. Defendants' motion for reconsideration will be denied.

The last issue to consider is plaintiffs' motion to compel. Defendants have provided to plaintiffs four datasets in computer-readable format concerning passengers who were searched upon arriving at O'Hare Airport. As to three of the datasets, information identifying the passengers was redacted. Plaintiffs seek the identifying information for all passengers who were African-American women subjected to a nonroutine personal search. Arguably, such passengers would all be members of the certified class and plaintiffs' attorneys contend that they have the right to confer with their clients, including unnamed class members.

Defendants imply that the real motivation for this request is so the attorneys can solicit additional clients.

As previously discussed, class certification is being modified to limit it to injunctive relief. Therefore, the proper members of the class are not necessarily all African-American women who were subjected to nonroutine personal searches in the past, but only those who would be likely to be subjected to such searches in the future. See Anderson IV, 2000 WL 286902 at *10; Ledford v. City of Highland Park, 2000 WL 1053967 *1 (N.D. Ill. July 31, 2000). As stated in Anderson IV, 2000 WL 286902 at *10 & n.13, the May 7, 1998 cutoff date for the class was a somewhat arbitrary date that was subject to revision. The class definition for Counts II, IV, VII, IX, and X will be modified to be: "All African-American women who (a) after May 7, 1998 were and likely in the future will be or (b) will in the future be: subjected to nonroutine personal searches by United States Customs employees at O'Hare International Airport and who were or will be detained for 24 hours or less." Cf. Ledford, supra. This definition more accurately reflects an appropriate class for which standing will be properly satisfied. Id. The Count VIII class definition will be similarly modified. The additional qualifiers and definitions contained in the Anderson IV order will remain in effect. See Anderson IV, 2000 WL 286902 at *30 (1(d)).

Taking into account this more accurate definition of the classes for injunctive relief, it cannot be assumed that all

African-American women who have previously been subjected to a nonroutine personal search are members of the class. Only those who are likely to again be subjected to such a search would be members of the class. Additionally, even if actual unnamed class members could be identified, plaintiffs have not shown a particular need for contacting unnamed class members. Plaintiffs' motion to compel will be denied.

At the next status hearing, the parties shall be prepared to address the question of what notice, if any, presently needs to be sent to the class.

IT IS THEREFORE ORDERED that:

(1) Plaintiffs' motion for limited reconsideration [190] is granted in part and denied in part. Counts VII and VIII are reinstated, but limited to the claim that the alleged searches were without reasonable suspicion. Also, the Count VII damages claim, to the extent it is based on a standard patdown search occurring prior to July 6, 1999, remains dismissed.

(2) Defendants' motion to alter or amend judgment [191] is denied.

(3) Plaintiffs' motion to compel [212] is denied.

(4) Class certification of the Count VII damages claim is vacated. Class certification is modified to be as follows:

(a) For purposes of injunctive relief on Counts II, IV, VII, IX, AND X: "All African-American women who (a) after May 7, 1998 were and likely in the future will be or (b) will in the future be: subjected to nonroutine personal searches by United

States Customs employees at O'Hare International Airport and who were or will be detained for 24 hours or less."

(b) For purposes of injunctive relief on Count VIII: "All airline passengers who (a) after May 7, 1998 were and likely in the future will be or (b) will in the future be: subjected to nonroutine personal searches by United States Customs employees at any United States international airport and who were or will be detained for 24 hours or less."

(c) As to both class definitions: (i) class members are limited to those persons who are United States citizens or United States permanent residents; (ii) excluded from the class are any persons for whom the nonroutine personal search revealed the person possessed contraband materials; and (iii) "nonroutine personal searches" are defined as: (a) patdowns, strip searches, monitored urination and/or bowel movements, visual body cavity searches, and/or physical body cavity searches that have and continue to occur in small enclosed rooms at O'Hare International Airport or in places used by United States Customs and its employees for similar purposes in other United States international airports; and (b) strip searches, monitored urination and/or bowel movements, visual and/or physical body cavity searches, x-rays, and/or the administration of laxatives to detained airline passengers that occur at the directions of United States Customs employees at non-border facilities, such as cooperating hospitals.

(5) Status hearing set for October 25, 2000 at 11:00 a.m.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: OCTOBER 12, 2000